UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on November 9, 2023

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MAURICE DRIVER,<br><br>Defendant. | CRIMINAL NO. _____<br><br>GRAND JURY ORIGINAL<br><br>VIOLATIONS:<br><br>Counts 1 through 5: 18 U.S.C. § 1001(a)(2)<br>(False Statements) |

## INDICTMENT

The Grand Jury for the District of Columbia charges that, at all times material to this Indictment, on or about the dates and times stated herein:

### Background

1. The National Railroad Passenger Corporation, doing business as Amtrak, was the national passenger railroad company of the United States and operated intercity rail service.

2. Defendant MAURICE DRIVER ("DRIVER") was employed by Amtrak as a Lead Service Attendant. While on duty, DRIVER's responsibilities included selling and serving food to train passengers in the café car. DRIVER had access to information about passengers, including who had purchased sleeper car tickets and which sleeper cars were vacant because one of his duties included ensuring that there were enough dinner portions for travelers in the sleeper cars.

3. In contrast to coach class tickets, sleeper car tickets were more expensive and provided passengers with individual rooms that contained beds and upgraded services, such as meal delivery.

4. On January 3, 2024, DRIVER was working on Train 29, which departed from Union Station in Washington, D.C. at approximately 4:05pm and traveled to Union Station in Chicago, Illinois, with a scheduled arrival of 8:45am on January 4, 2024. After arriving in Chicago, Amtrak provided DRIVER with a hotel room for his use during the day on January 4, 2024. DRIVER was then scheduled to return to Washington, D.C. on Train 30, which departed from Chicago on January 4, 2024, at approximately 6:40pm.

5. Person 1 was a passenger on Train 29 with a ticket for a coach class seat to travel from Washington, D.C. to Chicago. Person 1 had a layover in Chicago and then was scheduled to take a second train from Chicago to Spokane, Washington.

6. Between January 3 and January 4, 2024, Person 1 met DRIVER while Person 1 was a passenger on Train 29 and DRIVER was working in Train 29's café car. DRIVER and Person 1 conversed in the café car, DRIVER provided Person 1 with his cellular telephone number ending in -8770, and DRIVER and Person 1 communicated via text message using that number.

7. Although Person 1 did not have a sleeper car ticket, DRIVER offered to allow Person 1 to use a vacant sleeper car until the train arrived in Chicago. DRIVER showed Person 1 the sleeper car and allowed Person 1 to spend the night in the sleeper car. DRIVER continued to text Person 1 and visit Person 1 in the sleeper car.

8. After arriving in Chicago on January 4, Person 1 waited at the train station for Person 1's next train to Spokane. DRIVER went to the hotel Amtrak reserved for him. While waiting at the train station, DRIVER and Person 1 continued to exchange text messages. DRIVER invited Person 1 to his hotel.

9. On January 4, Person 1 went to DRIVER's hotel. When Person 1 arrived at DRIVER's hotel, Person 1 called and texted DRIVER. DRIVER never responded. Person 1 fell asleep in the lobby of the hotel and missed Person 1's train to Spokane.

10. On January 4, when Person 1 returned to the Chicago Amtrak train station from DRIVER's hotel, Person 1 located an Amtrak Police Department police officer and reported that DRIVER had sexually assaulted Person 1 in the sleeper car.

11. Amtrak's Office of Inspector General ("Amtrak-OIG") was a component within Amtrak that was located in the District of Columbia. Among other things, Amtrak-OIG was responsible for investigating Amtrak employee misconduct, including criminal misconduct and violations of Amtrak policies and procedures. Like Amtrak, Amtrak-OIG was part of the executive branch of the Government of the United States.

12. On January 5, in Washington, D.C., DRIVER agreed to a voluntary interview with an Amtrak-OIG federal law enforcement agent. Amtrak-OIG had initiated an investigation because of Person 1's sexual assault allegations.

## COUNT ONE

### (False Statement—18 U.S.C. § 1001(a)(2)

13. Paragraphs 1 through 12 are re-alleged.

14. On January 5, 2024, in the District of Columbia, the defendant,

**MAURICE DRIVER,**

did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States; that is, when asked in an interview conducted by federal law enforcement whether he had a telephone number that ends in -8770, DRIVER falsely stated: "No, sir." In fact, as

DRIVER knew, DRIVER subscribed to, used, and was familiar with the telephone number ending in -8770.

(In violation of Title 18, United States Code, Section 1001(a)(2))

## COUNT TWO

### (False Statement—18 U.S.C. § 1001(a)(2))

15. Paragraphs 1 through 12 are re-alleged.

16. On January 5, 2024, in the District of Columbia, the defendant,

**MAURICE DRIVER,**

did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States; that is, when asked in an interview conducted by federal law enforcement whether DRIVER provided Person 1 with any cellphone number belonging to DRIVER, DRIVER falsely stated: "No, sir." In fact, as DRIVER knew, DRIVER provided Person 1 with his cellphone number ending in -8770.

(In violation of Title 18, United States Code, Section 1001(a)(2))

## COUNT THREE

### (False Statement—18 U.S.C. § 1001(a)(2))

17. Paragraphs 1 through 12 are re-alleged.

18. On January 5, 2024, in the District of Columbia, the defendant,

**MAURICE DRIVER,**

did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States; that is, when asked in an interview conducted by federal law enforcement whether

4

DRIVER exchanged text messages with Person 1, DRIVER falsely stated: "No." In fact, as DRIVER knew, DRIVER had exchanged text messages with Person 1.

(In violation of Title 18, United States Code, Section 1001(a)(2))

### COUNT FOUR

### (False Statement—18 U.S.C. § 1001(a)(2))

19. Paragraphs 1 through 12 are re-alleged.

20. On January 5, 2024, in the District of Columbia, the defendant,

### MAURICE DRIVER,

did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States; that is, when asked in an interview conducted by federal law enforcement whether he placed Person 1 in a sleeper car, DRIVER falsely stated: "I didn't put [Person 1] in the sleeper. I don't know what you're talking about." In fact, as DRIVER knew, DRIVER had shown Person 1 to the sleeper car, offered and allowed Person 1 to spend the night in the sleeper car, and visited Person 1 in the sleeper car.

(In violation of Title 18, United States Code, Section 1001(a)(2))

### COUNT FIVE

### (False Statement—18 U.S.C. § 1001(a)(2))

21. Paragraphs 1 through 12 are re-alleged.

22. On January 5, 2024, in the District of Columbia, the defendant,

### MAURICE DRIVER,

did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the

United States; that is, when asked in an interview conducted by federal law enforcement whether DRIVER had provided Person 1 information about the hotel where he was staying during his layover in Chicago, DRIVER falsely stated: "No." In fact, as DRIVER knew, DRIVER had texted Person 1 his hotel information and invited Person 1 to meet DRIVER at his hotel.

(In violation of Title 18, United States Code, Section 1001(a)(2))

A TRUE BILL

_____
Foreperson
Date:

*Matthew M. Groves/jph*
MATTHEW M. GRAVES
United States Attorney
for the District of Columbia