IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

MAURICE DRIVER,

Defendant.

CRIMINAL NO. 24-cr-00254 (ABJ)

## STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

Defendant MAURICE DRIVER ("DRIVER") agrees to admit guilt and enter a plea of guilty to Count Two of the Indictment, which charges DRIVER with False Statements in violation of 18 U.S.C. § 1001(a)(2). Pursuant to Federal Rule of Criminal Procedure 11, the Government and DRIVER, with concurrence of his attorney, agree and stipulate that the Government would prove the following facts at trial beyond a reasonable doubt:

### Background

1. At all relevant times, the National Railroad Passenger Corporation, doing business as Amtrak, was the national passenger railroad company of the United States and operated intercity rail service.

2. DRIVER was employed by Amtrak as a Lead Service Attendant. While on duty, DRIVER's responsibilities included selling and serving food to train passengers in the café car. DRIVER had access to information about passengers, including who had purchased sleeper car tickets and which sleeper cars were vacant because one of his duties included ensuring that there were enough dinner portions for travelers in the sleeper cars.

3. In contrast to coach class tickets, sleeper car tickets were more expensive and provided passengers with individual rooms that contained beds and upgraded services, such as meal delivery.

4. On January 3, 2024, DRIVER was working on Train 29, which departed from Union Station in Washington, D.C. at approximately 4:05pm and traveled to Union Station in Chicago, Illinois, with a scheduled arrival of 8:45am on January 4, 2024. After arriving in Chicago, Amtrak provided DRIVER with a hotel room for his use during the day on January 4, 2024. DRIVER was then scheduled to return to Washington, D.C. on Train 30, which departed from Chicago on January 4, 2024, at approximately 6:40pm.

5. Person 1 was a passenger on Train 29 with a ticket for a coach class seat to travel from Washington, D.C. to Chicago. Person 1 had a layover in Chicago and then was scheduled to take a second train from Chicago to Spokane, Washington.

6. Between January 3 and 4, 2024, Person 1 met DRIVER while Person 1 was a passenger on Train 29 and DRIVER was working in Train 29's café car. DRIVER and Person 1 conversed in the café car, and DRIVER provided Person 1 with his cellular telephone number ending in -8770, and DRIVER and Person 1 communicated via text message using that number.

7. Although Person 1 did not have a sleeper car ticket, DRIVER offered to allow Person 1 to use a vacant sleeper car until the train arrived in Chicago. DRIVER showed Person 1 the sleeper car and allowed Person 1 to spend the night in the sleeper car. DRIVER continued to text Person 1 and visit Person 1 in the sleeper car.

8. After arriving in Chicago on January 4, Person 1 waited at the train station for Person 1's next train to Spokane. DRIVER went to the hotel Amtrak reserved for him. While

2

mj> 8/9/24

waiting at the train station, DRIVER and Person 1 continued to exchange text messages. DRIVER invited Person 1 to his hotel.

9. On January 4, Person 1 went to DRIVER's hotel. When Person 1 arrived at DRIVER's hotel, Person 1 called and texted DRIVER. DRIVER never responded. Person 1 fell asleep in the lobby of the hotel and missed Person 1's train to Spokane.

10. On January 4, 2024, while at the Chicago Amtrak train station, Person 1 located an Amtrak Police Department police officer and reported that DRIVER had sexually assaulted Person 1 on the train from Washington, D.C.

### False Statement

11. Amtrak's Office of Inspector General ("Amtrak-OIG") is a component within Amtrak that is located in the District of Columbia. Among other things, Amtrak-OIG is responsible for investigating Amtrak employee misconduct, including criminal misconduct and violations of Amtrak policies and procedures. Like Amtrak, Amtrak-OIG is part of the executive branch of the Government of the United States.

12. On January 5, 2024, in the District of Columbia, DRIVER agreed to a voluntary interview with an Amtrak-OIG federal law enforcement agent. Amtrak-OIG had initiated an investigation because of Person 1's sexual assault allegations.

13. When asked during the interview conducted by federal law enforcement whether DRIVER provided Person 1 with any cellular telephone number belonging to DRIVER, DRIVER falsely stated: "No, sir."

14. In fact, as DRIVER knew, DRIVER had provided Person 1 with his cellular telephone number ending in -8770.

Respectfully Submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

/s/ Rebecca G. Ross
REBECCA G. ROSS
N.Y. Bar No. 5590666
BRIAN P. KELLY
D.C. Bar No. 983689
Assistant United States Attorneys

DATED: August 7, 2024

4

## DEFENDANT'S ACCEPTANCE

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crimes charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully.

I have read every word of this Statement of the Offense. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of the Offense, and declare under penalty of perjury that it is true and correct.

Date: 8/7/24

Maurice Driver
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Offense and reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Statement of the Offense as true and accurate.

Date: 8/7/2024

Eugene Ohm
Counsel for Defendant

5

MD 8/9/24